Jones, J.
We hold that, for purposes of applying the Statute of Limitations, a landlord’s counterclaim to the tenant’s demands for recovery of overpayment of rent (where that counterclaim is based on the assertion that the lease between them should be reformed) does not arise "from the transactions, occurrences, or series of transactions or occurrences” upon which the tenant’s claim for overpayment of rent depends. Accordingly in this instance, the landlord’s attempted supplemental submission to arbitration of its claim for relief in the nature of reformation was properly stayed, on timely application of the tenant, as being barred by the six-year Statute of Limitations. We also hold that, were the landlord’s counterclaim to be reached, an arbitrator would have power under a broad arbitration clause to grant appropriate relief including that similar to the remedy of reformation in equity. It was thus error below to grant the stay of arbitration on the alternative ground that the specific relief sought therein would not have been available.
In June, 1966 the parties entered into an agreement by which the tenant leased several floors of a commercial building from the landlord for a term of 50 years commencing February 28, 1968. The agreement provided a fixed rent, made subject in section 2.02 to annual adjustments equal to 17.73% of changes in real estate taxes and expenses incurred on the building over "Base Taxes” and an "Expense Base Factor” as those terms were defined. Also included was an arbitration clause by which the parties agreed that "if there be any dispute between Landlord and Tenant with respect to the provisions of this Section 2.02, the issue shall be expeditiously submitted to the American Arbitration Association for determination”.
After the tenant had entered upon the premises it was advised on August 6, 1969 of a rent escalation due to an increase in taxes for the 1969-1970 tax year and on September 21, 1970 of an escalation resulting from an increase in operating expenses during the fiscal year ended November 30, 1969. The requested payments were made without objection as were increases for each of the subsequent years until with the payments due for expense increases for the year ended No *790 vember 30, 1972 and for tax increases for the 1973-1974 tax year the tenant included a reservation of its right to disagree with the escalations imposed.
On February 15, 1974 the tenant served a demand for arbitration of claims that the landlord’s calculation of the "Expense Base Factor” and the annual increments in expenses through 1972 had been improper and that the landlord had violated section 2.02 of the lease insofar as taxes on the property were concerned. Arbitration was postponed during settlement negotiations and after their collapse until it was judicially determined that the landlord was barred by lapse of time from making an application for a stay of arbitration. Shortly before the first arbitration hearing, scheduled for January 19, 1976, the landlord filed an amended answer in the arbitration proceedings in which it asserted a "Fifth Defense” by which it sought for the first time in effect to have the lease rewritten so as to raise the tenant’s liability for increases in electricity expense from 17.73%, as specified in the agreement, to 24.98%, asserted to be the tenant’s proportionate share of such expenses. The tenant then promptly instituted the present proceeding for a stay of arbitration of the alleged defense asserting that the reformation sought was beyond the power of the arbitrators and in any event, not having been sought until almost 10 years after the execution of the lease, was barred by the Statute of Limitations. Upholding both contentions, the Appellate Division reversed Special Term and granted the stay. (53 AD2d 595.)
The order should be affirmed. By virtue of CPLR 7503 (subd [b]) the tenant is entitled to a stay of arbitration of the landlord’s claim for relief if "the9 claim sought to be arbitrated would have been barred by limitation of time had it been asserted in a court of the state” (CPLR 7502, subd [b]). The landlord’s counterclaim falls precisely within this description. As we have recently observed, in determining an application to stay arbitration on the ground the claim is time-barred, "the period of limitation to be applied should, with exceptions not to be proliferated, depend upon the form of the remedy” (Matter of Paver & Wildfoerster [Catholic High School Assn.], 38 NY2d 669, 676). The particular form of remedy sought by what is denominated the fifth "defense” stated in respondent’s answer is a rewriting of the terms of the lease agreement with a concurrent determination of liability on the part of the tenant for additional rent in consequence of such revision of *791 the instrument. Were the landlord to seek such relief in a judicial proceeding, it would be barred by the six-year limitation provided by CPLR 213 (subd 1) for an action for which no other limitation is fixed by law. That statutory section is the successor to section 53 of the Civil Practice Act prescribing a 10-year period, which was applicable to actions for reformation (Hanover Fire Ins. Co. v Morse Dry Dock & Repair Co., 270 NY 86).
The landlord’s reliance on the suggestion in Bartlett v Judd (21 NY 200) that the Statute of Limitations does not apply to an equitable defense is unwarranted. What the landlord asserts in this present instance is not a defense—that is, a bar to the claim asserted by the tenant—but is in the nature of a counterclaim, i.e., a statement of circumstances which in and of themselves may form the basis of an adjudication of affirmative relief in favor of the landlord on its claim, irrespective of the tenant’s success or failure on the latter’s cause of action. The landlord’s repeated insistence that it seeks relief on its request for reformation only in the event that the arbitrator considers the tenant’s claim for refund of overpayment of rent serves simply to make the assertion of its demand for relief contingent; it does not vary the nature of the remedy pursued.
Nor is the landlord’s reliance on CPLR 203 (subd [c]) well founded. That section excludes from the bar of limitations, but only to the extent of plaintiffs claim, counterclaims even if they would have been barred at the time of the commencement of the action, provided that the counterclaim be one that "arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends.” Here, however, respondent’s claim for reformation is not in the nature of recoupment, the equitable doctrine in which the statutory provision is grounded. It does not seek a recovery-back predicated on some act or fact growing out of the matter constituting the cause or ground of the action brought, but is instead a setoff—a separate and distinct claim in favor of the landlord. The tenant’s demand for refund of rent overpayment is predicated on acts of the landlord related to, or by which it computed and assessed, escalations of rent after the term of the lease commenced in February, 1968; the landlord’s demand for reformation is grounded on allegations as to the intention of the contracting parties prior to and at the time the lease was executed with *792 respect to the proportionate share of electrical expense to be borne by the tenant. The tenant’s claim relates to performance under the contract; the landlord’s relates to the negotiation and articulation of the agreement made between the parties prior to its execution. While in a most general sense both might be said to be associated with the lease, in the language of CPLR 203 (subd [c]), the claims do not arise out of the same transactions or occurrences.
Since the landlord’s counterclaim for relief in the nature of reformation of the 1966 contract, if asserted in a law action in 1974, would have been barred by the Statute of Limitations, the tenant has properly been granted a stay of arbitration under CPLR 7503 (subd [b]).
We find no merit in the landlord’s contentions that the tenant by initiating arbitration authorizing that remedy and by participating therein for two years has waived any right to challenge respondent’s demand that the arbitrator reform the lease. First, it may be observed that there has been no participation in arbitration of respondent’s demand for reformation by petitioner, which moved promptly after receipt of the amended answer to stay arbitration of that claim. Neither may petitioner be said to have waived its right to challenge the arbitrability of the claim for reformation by virtue of the fact that it initiated the arbitration process. On timely application and absent participation in arbitration proceedings without challenge to the matters introduced, there is no basis for barring a party who has sought arbitration from thereafter seeking judicial determination as to arbitrability of matter set forth in an answer which would expand the scope of the arbitration (cf. Matter of James Talcott, Inc. [Lowenstein & Sons], 33 NY2d 924).
Finally, because the issue has been briefed and argued expansively by the parties in this action, was explicitly addressed by the court below, and is one on which lower courts have differed (cf. Swartz v Swartz, 49 AD2d 254; Matter of Agora Development Corp. [Low], 19 AD2d 126; Stewart-Scott Constr. Corp. v Schaefer Brewing Co., 41 AD2d 788; Matter of Glenwood Jewish Center [Marard Caterers], 39 AD2d 536), we take this occasion to express our disagreement with the position articulated by the Appellate Division that arbitrators have no power under a broad arbitration clause to grant what we would think of as the remedy of reformation. Arbitrators have power to fashion remedies appropriate to the resolution *793 of the dispute between the parties before them. To the extent that relief in the nature of reformation might be deemed an appropriate remedy for the controversies existing between this tenant and this landlord, the award of such a remedy would fall within the authority of arbitrators acting under a broad arbitration clause. "It is customary and appropriate for arbitrators to pass upon claims for reformation for mutual mistake, often applying principles more liberal than judicial equity” (International Union of Operating Engrs. v Carl A. Morse, Inc., 529 F2d 574, 580; American Home Assur. Co. v American Fid. & Cas. Co., 356 F2d 690; Elkouri and Elkouri, How Arbitration Works, p 346). The function of arbitrators is to "find a just solution” to the controversy between the parties (Lentine v Fundaro, 29 NY2d 382, 385); to that end it will be tor them to "fashion the remedy appropriate to the wrong” (Matter of Paver & Wildfoerster [Catholic High School Assn.], 38 NY2d 669, 677, supra). Moreover, the rules of the American Arbitration Association adopted by the parties now before the court expressly provide that "[t]he Arbitrator may grant any remedy or relif which he deems just and equitable and within the scope of the agreement of the parties”.
In arbitration parties seek the resolution of differences which have arisen between them in concrete factual settings free from the requirements and expectations familiar to judicial proceedings with respect both to the formulation of pleadings and causes of action and to historical and current legal theories as to the availability of remedies. The awards of arbitrators are not subject to judicial review for errors of law or of fact. Nor should there be the control which would flow from the exercise of such power of review. Submissions are for determinations based on the ad hoc application of broad principles of justice and fairness in the particular instance. Reliance is not placed on continuity of tribunal personnel or operation. Predictability is not an objective and awards do not have, nor is it intended that they should have, the precedential value that we attach to judicial determinations. Thus analytical structure and synthesis take on a different function. In the present context, for instance, it would be unimportant whether an arbitrator were to formulate his resolution of the landlord’s claim for increased additional rent in a conclusion that the initial intent of the parties was that the percentage figure in the lease be higher and accordingly that the lease should be rewritten to manifest that intent, or, on the other *794 hand, in a determination that in all the circumstances justice dictated that the differences between the parties should be disposed as though the percentage figure had been higher. This is not to suggest that awards are not based on analysis, logic and experience. It is to say that the channels of legal procedure and thought understandably may often be found to be lacking, or at least not determinative.
We hold that in the absence of contrary public policy (cf. Garrity v Lyle Stuart, Inc., 40 NY2d 354) or an express provision in the arbitration agreement otherwise limiting his authority, the arbitrator of the disputes between these parties would have the power to grant relief which in the courts would be called reformation by rewriting the provisions of the lease. Because, however, the claim of the landlord for which such relief is sought is barred by the Statute of Limitations, the order staying arbitration of that claim should be affirmed.