**MOBIL OIL INDONESIA INC.,**
Petitioner,

v.

**ASAMERA OIL (INDONESIA) LTD. and
Benedum-Trees Oil Company,**
Respondents.

No. 79 Civ. 5111 (LFM).

United States District Court,
S. D. New York.

March 31, 1980.

Milbank, Tweed, Hadley & McCloy, New York City, for petitioner by William E. Jackson, Adlai S. Hardin, Jr., Richard C. Tufaro and Charles E. Dropkin, New York City.

Breed, Abbott & Morgan, New York City, for respondents by Stephen R. Lang, C. MacNeil Mitchell, Paul J. Weiner and Bruce A. Langer, New York City.

## OPINION

MacMAHON, Chief Judge.

Petitioner moves, pursuant to 9 U.S.C. § 10 and New York CPLR § 7511, for an order vacating the award of an arbitration panel of the International Chamber of Commerce ("ICC"). Respondents cross-petition, pursuant to 9 U.S.C. § 9 and New York CPLR § 7510, for an order confirming the award.

This dispute arises out of a contract by which respondents assigned to petitioner ("Mobil") certain hydrocarbon development rights in "Contract Area B," a 750,000 acre area in Sumatra, Indonesia. The background is as follows:

Between 1961 and 1966, respondent Asamera Oil (Indonesia) Ltd. ("Asamera") entered into contractual arrangements (the "Sumatra B Agreements") with Permina, a state-owned Indonesian corporation, to explore and develop oil deposits in the area in return for a share of the proceeds from oil sales. Respondent Benedum-Trees Oil Company ("Benedum") and Union Texas (Indonesia) Ltd. ("Union"), not a party here, subsequently acquired percentages of Asamera's interests in the Sumatra B Agreements.

In 1968, Asamera, acting on behalf of itself, Benedum and Union, entered into a contract (the "Assignment Agreement") with Mobil in which Mobil acquired their interests in the Sumatra B Agreements in return for $3,000,000 plus certain ongoing royalty payments on "crude oil" production for Contract Area B. The Assignment Agreement provided that it was to be governed and construed according to New York law [1] and that any dispute "arising out of or relating to" the Assignment Agreement was to be resolved through ICC arbitration in New York.[2]

In 1971, Mobil discovered a rich deposit of natural gas in Area B. A dispute then arose as to whether the Assignment Agreement obligated Mobil to pay royalties on natural gas and liquid hydrocarbon products other than crude oil.

In 1974, pursuant to the arbitration clause, the dispute went before a duly convened panel of ICC arbitrators.[3] Discovery and extensive hearings ensued, following which Union settled its share of the dispute with Mobil. In October 1979, the panel, by a 2–1 vote, made an award requiring that Mobil pay royalties to Asamera and Benedum on all hydrocarbon production from Contract Area B, including natural gas as

---

**1.** Assignment Agreement Cl. XIV provides:
"This Agreement shall be governed by and construed in accordance with the laws of the State of New York."

**2.** Assignment Agreement Cl. XVI provides:
"Any dispute arising out of or relating to this Agreement shall be settled by arbitration in accordance with the Rules of the International Chamber of Commerce. The place of arbitration shall be New York, New York. Judg-

ment upon any award may be entered in any court having jurisdiction."

**3.** Before the panel, a dispute arose as to whether the 1955 ICC Rules or the 1975 ICC Rules should govern. The panel ruled that the 1975 Rules would govern, and this ruling was confirmed in the New York state courts. *Mobil Oil Indonesia Inc. v. Asamera Oil (Indonesia) Ltd.,* 43 N.Y.2d 276, 401 N.Y.S.2d 186, 372 N.E.2d 21 (1977).

well as liquid hydrocarbons, in amounts substantially equal to the royalty on crude oil. In addition, the panel granted a fixed royalty on crude oil of 4 cents per barrel, whereas the Assignment Agreement provided for a royalty of 3½ to 4 cents to be determined by a formula. Mobil now seeks to upset this award,[4] relying on an array of arguments.

### A. *"Exceeded their powers."*

Under § 10(d) of the Federal Arbitration Act, we may vacate the award if the arbitrators "exceeded their powers."[5] Mobil contends that the majority here exceeded their powers in four respects: they (1) rewrote the Assignment Agreement by substituting new royalty provisions for the royalty provisions contained in Clause V(B)(1) of the Agreement; (2) failed to determine the dispute in accordance with New York law, as required by Clause XIV; (3) acted in manifest disregard of undisputed facts; and (4) made an award that is wholly irrational and inconsistent.

■ Before turning to these specific contentions, we must reiterate our Court of Appeals' recent injunction to accord the "narrowest of readings" to the excess-of-powers provision of § 10(d), especially where the contention is that the arbitrators failed correctly to decide a question conceded to have been properly submitted.[6] Indeed, in *Andros Compania Maritima v. Marc Rich & Co.*, the court held:

> "When arbitrators explain their conclusions . . . in terms that offer even

a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result."[7]

The reason for this rule is simply that in such a case it is the arbitrators' construction of the contract that was bargained for, not the courts',[8] presumably because the parties preferred at least the theoretical speed, informality, inexpensiveness and expertise of the arbitrators.[9]

■ Here, there is no dispute that questions as to the nature and amounts of royalty payments were properly before the panel.[10] The arbitration clause here was even broader than the one involved in *Andros Compania* in that it encompassed not only all disputes "arising out of" the contract, but also all those "relating to" the contract.[11] Thus, the arbitrators had jurisdiction to decide the subject matter of the dispute. The only limitations on the exercise of this power were the Assignment Agreement's requirements that the arbitrators follow ICC rules[12] and that the Agreement was to be "governed by" and "construed in accordance with" New York law.[13]

We hold that the majority's 43-page statement of reasons gave at least a "barely colorable" justification for the outcome. Indeed, for each conclusion the majority gave several reasons, all of them based exclusively on New York law.

■ As to Mobil's obligation to pay a royalty on natural gas and liquid hydrocarbons other than crude oil, the majority stat-

---

4. The merits of the dispute were resolved in Part I of the award. Part II of the award, requiring Mobil to bear a portion of respondents' costs, is apparently unchallenged here.

5. 9 U.S.C. § 10(d). *Cf.* N.Y. CPLR § 7511(b)(1)(iii) (court may vacate where "arbitrator . . . exceeded his power").

6. *Andros Compania Maritima v. Marc Rich & Co.*, 579 F.2d 691, 703 (2d Cir. 1978).

7. *Id.* at 704.

8. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

9. *Andros Compania Maritima v. Marc Rich & Co., supra*, 579 F.2d at 701.

10. In its reply to the request for arbitration, Mobil acceded to respondents' submission. Respondents' Ex. G, ¶ 52.

11. *Compare* Assignment Agreement Cl. XVI *with Andros Compania Maritima v. Marc Rich & Co., supra*, 579 F.2d at 693 n.2.

12. Assignment Agreement Cl. XVI.

13. *Id.* Cl. XIV.

ed, among other things, that the Assignment Agreement was ambiguous. Specifically, the term "crude oil," on which royalties were explicitly required, was never defined. The Agreement required Asamera and Benedum to give up all hydrocarbon rights [14] in return for a cash payment and royalties on "crude oil," thus suggesting the possibility that "crude oil," despite its commonsense definition, was intended to be synonymous with "all hydrocarbons." In short, it was not entirely clear what definition the parties intended to give to the term.

The arbitrators were thus entitled, under New York rules of contract construction, to look to parol evidence of all the surrounding facts and circumstances and to construe the Agreement most strongly against the drafter, Mobil.[15] The majority construed the term, in light of the negotiations underlying the Agreement and Mobil's occasional broad use of the term, to include natural gas and all liquid hydrocarbons.[16] While we might make a different construction, we cannot say that the panel failed to apply New York rules of construction or gave reasons for its construction that did not rise to the low level of the "barely colorable."

■ Having decided that such a royalty was payable, the arbitrators made it substantially equivalent in amount to that required by Clause V(B)(1) of the Agreement, a result that seems not only colorable but eminently sensible, if indeed not logically required by the broad construction of the term "crude oil." As for the fixing of the crude oil royalty at 4 cents per barrel, this was proper since a contract "governed by" [17] New York law is subject to reformation on grounds of mistake and unjust en-

richment.[18] The arbitrators found such grounds here.

The provision that royalty requirements extend through any extension of the Sumatra B Agreements simply resolves an ambiguity as to the duration of the Assignment Agreement. This provision is reasonable in that any benefit to Mobil resulting from any extension of the Sumatra B Agreements is ultimately traceable to respondents' transfer of their rights under those Agreements.

■ Finally, as to the provision that in order to effectuate the royalty payments respondents were to have access to Mobil's records, this remedial provision lay within the arbitrators' discretion under a broad arbitration clause such as this one [19] to mold the remedy to the particular facts.[20]

Thus, we conclude that the award cannot be vacated under 9 U.S.C. § 10(d). Mobil's first two contentions are belied by the arbitrators' application of principles of New York law to the dispute. The "undisputed facts" to which Mobil points were in fact in dispute, and the disputes were simply resolved against Mobil on conflicting evidence. Finally, we cannot say that the award is infested with "complete irrationality" [21] or inconsistency. It is rather based on principles of contract interpretation, unjust enrichment and mistake. The amounts of the royalties required are derived from the provisions of the Assignment Agreement.

B. *Fraud and undue means.*

■ Under § 10(a) of the Federal Arbitration Act, we may vacate the award if it

14. *See id.* Cl. II.

15. *See, e. g., 67 Wall St. Co. v. Franklin Nat'l Bank,* 37 N.Y.2d 245, 248–49, 371 N.Y.S.2d 915, 333 N.E.2d 184 (1975).

16. *E. g.,* Statement of Reasons 8.

17. Assignment Agreement Cl. XIV.

18. *See Johns-Manville Sales Corp. v. Stone,* 5 A.D.2d 110, 114, 169 N.Y.S.2d 259, 264 (1st dep't 1957).

19. *See Mobil Oil Indonesia Inc. v. Asamera Oil (Indonesia) Ltd., supra,* 43 N.Y.2d at 279, 401 N.Y.S.2d 186, 372 N.E.2d 21.

20. *Matter of SCM Corp.,* 40 N.Y.2d 788, 792–94, 390 N.Y.S.2d 398, 358 N.E.2d 1024 (1976).

21. *See Lentine v. Fundaro,* 29 N.Y.2d 382, 383, 328 N.Y.S.2d 418, 278 N.E.2d 633 (1972); *I/S Stavborg v. National Metal Converters, Inc.,* 500 F.2d 424, 431 (2d Cir. 1974).

was "procured by . . . fraud, or undue means."[22] Mobil claims that the award was procured by such means in that the majority accepted false testimony by respondents' principal witness as the basis for finding that an oral agreement existed under which Mobil was to pay an "overriding royalty" on hydrocarbon production.

The contention that this testimony was false was considered and rejected by the majority. We thus cannot review what was essentially a finding of fact.[23] Moreover, even if the testimony were false, it formed a basis for only an alternative justification for the result. Mobil has not met its burden of showing that the award was "procured by" the allegedly false testimony.

Accordingly, petitioner's motion, pursuant to 9 U.S.C. § 10 and New York CPLR § 7511, to vacate the arbitration award is denied. Respondents' cross-petition to confirm the award, pursuant to 9 U.S.C. § 9 and New York CPLR § 7510, is granted. The Clerk of the court is directed to enter judgment on the award.

So ordered.

---

22. 9 U.S.C. § 10(a). *Cf.* N.Y. CPLR § 7511(b)(1)(i) ("fraud or misconduct in procuring the award").

23. *Amicizia Societa Navegazione v. Chilean Nitrate & Sales Corp.*, 274 F.2d 805, 808 (2d Cir. 1960).