**FIRST FIDELITY BANK N.A. NEW JERSEY, As Successor to First National State Bank, Plaintiff,**

v.

**COMPANHIA DE NAVEGACAO MARITIMA NETUMAR, Defendant.**

No. 84 Civ. 8761 (GLG).

United States District Court, S.D. New York.

July 9, 1986.

---

McHugh & O'Conor, New York City, for plaintiff; Richard E. Meyer, of counsel.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant; William K. Dodds, Renato C. Giallorenzi, of counsel.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Plaintiff First Fidelity Bank N.A. New Jersey brings this action as assignee of the accounts receivable of Sealand Terminal Corp. ("Sealand"), a stevedoring company that filed for bankruptcy in May 1984. Sealand was itself the successor in interest to United Terminals, Inc. ("United"). By order of the United States Bankruptcy Court for the District of New Jersey, the plaintiff was authorized and empowered to institute and maintain this action against defendant Companhia de Navegacao Maritima Netumar ("Netumar").

From 1971 to 1983, United, and later, Sealand, performed stevedoring and terminal operating services for Netumar at Pier 36, East River in the Port of New York. The complaint alleges that, at the time Sealand filed for bankruptcy, Netumar owed it approximately $600,000 for services rendered in 1983 and 1984. Netumar asserts two counterclaims. Its first counterclaim alleges that from 1971 to 1983, Netumar mistakenly paid $532,000 for general liability insurance coverage in connection with Pier 36. According to Netumar, prior to 1983, it was unaware that this insurance coverage duplicated coverage that it had secured under another policy. Had it known of the duplicative nature of this policy, it would not have paid Sealand's insurance charges. Netumar's mistaken payment of these sums purportedly gives rise to a claim against Sealand for unjust enrichment. Netumar's second counterclaim is for breach of contract. Netumar asserts that from January 1971 to September 1973, Sealand overcharged it by $800,000 for workers' compensation insurance. Netumar allegedly discovered the overcharge in 1975 and demanded repayment from United/Sealand; payment has never been made.

The plaintiff moves to dismiss each of Netumar's counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which

relief can be granted. In ruling on a motion to dismiss, the Court must accept Netumar's allegations as true and can dismiss the counterclaims only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted).

### A. The First Counterclaim

Under the law of New York, " 'a party who has made a mistaken payment to another based upon a unilateral mistake of fact may recover the payment unless the payee has changed his position to his detriment in reliance upon the mistaken payment.' " *National Bank of Canada v. Artex Industries, Inc.*, 627 F.Supp. 610, 614 (S.D.N.Y.1986) (quoting *Bank Saderat Iran v. Amin Beydown, Inc.*, 555 F.Supp. 770, 773 (S.D.N.Y.1983) ). "The law permitting a person to recover for monies paid by mistake is based upon the principle of unjust enrichment." *Blue Cross of Central New York, Inc. v. Wheeler*, 93 A.D.2d 995, 461 N.Y.S.2d 624, 626 (4th Dep't 1983). One who is unjustly enriched at the expense of another is required to make restitution to the other. *Id.* According to the plaintiff, Netumar cannot make such a claim because Sealand was not unjustly enriched. Rather, it obtained the insurance coverage for which it paid. However, the pleadings, on their face, do not indicate the cost of the policy carried by Sealand as compared with the insurance charge paid by Netumar. Thus, it is unclear whether the plaintiff merely passed along the cost, or reaped a middleman's profit. Such a profit could have unjustly enriched Sealand.

The plaintiff also asserts that Sealand relied to its detriment on Netumar's insurance payments barring recovery of those sums, even if paid by mistake. The defendant counters that the plaintiff's assertion that Sealand changed its position in reliance on Netumar's payments is an affirmative defense that is unsubstantiated in the pleadings. Since reliance can be pleaded generally, the Court cannot resolve this issue on a motion to dismiss. *See Reingold v. Deloitte Haskins & Sells*, 599 F.Supp. 1241, 1262 (S.D.N.Y.1984) (reliance is an issue for the factfinder).

Finally, the plaintiff contends that Netumar has waived any right to object to the allegedly excessive insurance charges. Netumar received weekly bills from Sealand/United which showed a charge for insurance. It paid these bills, without question or complaint, for twelve years. According to Sealand, Netumar cannot now claim that it was operating under a mistake of fact that would support its claim for relief. In response, Netumar argues that the weekly bills varied, and that those bills did not clearly indicate the duplicative nature of the coverage provided to Netumar. Netumar asserts that Sealand never provided a copy of the policy or advised it of the terms. According to Netumar, had Sealand done so, Netumar would have discovered the mistake and ceased paying the disputed charge. The issues of fact raised by this argument cannot be resolved on a motion to dismiss.

■ Applying the applicable standard on a motion to dismiss, we cannot dismiss the defendant's first counterclaim. Although the defendant's first claim is questionable (it is somewhat implausible that Netumar continued paying substantial sums "by mistake" for 12 years), we cannot say that under no set of circumstances could Netumar prevail. The plaintiff's motion to dismiss the first counterclaim is, therefore, denied.

### B. The Second Counterclaim

The plaintiff asserts that the defendant's second counterclaim should be dismissed as time barred. The statute of limitations for a contract claim is six years. N.Y. Civ. Prac. Law ("CPLR") § 213(2) (McKinney 1972). Standing alone, a claim such as Netumar's would be time barred. However, rather than seek full recovery for the $800,000 it allegedly overpaid, Netumar raises its counterclaim as an action for recoupment. CPLR § 203, which codifies

the equitable doctrine of recoupment, states that if a "counterclaim arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends, it is not barred to the extent of the demand of the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed." [1]

In order to fit within this subsection, the counterclaim must "seek a recovery-back predicated on some act or fact growing out of the matter constituting the cause or ground of the action brought...." *SCM Corp. v. Fisher Park Lane Co.*, 40 N.Y.2d 788, 358 N.E.2d 1024, 1027-78, 390 N.Y. S.2d 398, 401-402 (1976). The provision is defensive in nature, *118 East 60th Owners, Inc. v. Bonner Properties, Inc.*, 677 F.2d 200, 203 (2d Cir.1982), and is not to be applied as a weapon of aggression against the party initiating the action. *Id.* at 204.

The defendant first maintains that the alleged overpayment arose from "the same transaction" as the main claim. According to the defendant, in 1971 it entered into an oral cost-plus contract with the plaintiff for the performance of stevedoring and terminal operating services over an unspecified time period. This oral contract assertedly obligated it to pay workers compensation insurance. The alleged overpayments between 1971 and 1973 thus arose out of the same transaction as the main claim, which allegedly arose out of the same oral contract.

█ We disagree. The mere fact of an ongoing business relationship, especially one so loosely cemented by an oral contract, is insufficient to establish that both claims originated from the same transaction. *See SCM Corp. v. Fisher Park Lane Co., supra*, 390 N.Y.S.2d 398, 358 N.E.2d 1024 (1976).

█ The plaintiff's claim arose out of the defendant's alleged failure to pay for the services the plaintiff rendered in 1983 and 1984. The defendant's alleged overpayments transpired more than ten years earlier as part of a separate transaction involving the provision of different and separable stevedoring services. The defendant's counterclaim is wholly unrelated to that aspect of the plaintiff/defendant relationship upon which the plaintiff has brought suit and, therefore, cannot give rise to a claim for recoupment.

Nor does the fifteen year relationship between the plaintiff and the defendant constitute a "series of transactions or occurrences" within the meaning of § 203(c). Each time Netumar used Sealand/United's services, a separate, unrelated transaction occurred since each such interaction would have involved different ships, different dates, different stevedores and different invoices. *See Shipping Corp. of India, Ltd. v. Pan American Seafood, Inc.*, 583 F.Supp. 1555 (S.D.N.Y.1984). Such fortuitously and tangentially connected events cannot form the predicate of an equitable recoupment claim. Were we to hold otherwise, we would transform § 203(c) and the doctrine of equitable recoupment codified therein from a shield into a sword and thereby defeat its intended purpose.

The plaintiff's motion to dismiss the defendant's second counterclaim is granted. The motion to dismiss the first counterclaim is denied.

SO ORDERED.

---

1. Jurisdiction over this action is based on both admiralty and diversity, since the plaintiff (and its predecessor in interest) is a New Jersey corporation and the defendant is a foreign corporation with its principal place of business in New York. New York's doctrine of equitable recoupment is to the same effect as that governing admiralty claims. *See Shipping Corp. of India, Ltd. v. Pan American Seafood, Inc.*, 583 F.Supp. 1555, 1557 n. 3 (S.D.N.Y.1984). Thus, it matters not whether section 203(c) or the law of admiralty applies to this question.