Charles FALK and Charlotte
Falk, Plaintiffs,

v.

FFF INDUSTRIES, INC., formerly
known as Falk Fibers & Fabrics,
Inc., Defendant.

No. 87 Civ. 8466 (PKL).

United States District Court,
S.D. New York.

Feb. 26, 1990.

Shea & Gould, New York City (Martin I. Shelton and David S. Tannenbaum, of counsel), for plaintiffs.

Newman Tannebaum Helpern, Syracuse & Hirschtritt, New York City (Vincent J. Syracuse, Ralph A. Siciliano and Richard S. Murad, of counsel), for defendant.

## OPINION AND ORDER

LEISURE, District Judge.

This is a breach of contract action with extensive counterclaims alleging self-dealing on the part of plaintiff Charles Falk. Plaintiffs now come before the Court seeking dismissal of defendant's counterclaims.[1] Defendant has cross-moved for summary judgment on plaintiffs' claims arising under New York State Labor Law § 198.

## BACKGROUND

Plaintiff Charles Falk ("Falk") is an 83 year old former executive. Along with his wife Charlotte Falk, he is suing FFF Industries (hereinafter referred to interchangeably as "FFF," the "corporation," or the "company") for money allegedly owing him and his wife under a employment contract Falk entered into with FFF in 1974. FFF

---

1. Plaintiffs originally moved for summary judgment on all their claims, as well as moving to dismiss defendant's counterclaims. However, after defendant submitted responsive papers, plaintiffs voluntarily withdrew their summary judgment motion on their claims, admitting that defendant had shown there to be genuine issues of fact on those claims. The Court appreciates plaintiffs' candor in withdrawing portions of their motion in the face of obvious questions of fact. The Court is concerned, however, that the motion was brought in the first place. Almost all the information on which defendant relied is available in transcripts of depositions taken prior to the motion and which was thus available to plaintiff. It appears that thorough research would have revealed the futility of the motion prior to its being brought. The Court is disturbed by the apparent lack of such preparation before the filing of a motion of such magnitude.

was founded in 1970 by Falk and others under the name of Falk Fibers & Fabrics. Falk gave the common stock of FFF to his children and grandchildren as a gift. Falk retained 85% of the non-voting preferred stock. FFF was a family owned and run business. Falk served as Chairman of the Board of Directors. His son, Michael Falk, served as President and Chief Executive Officer, and Falk's son-in-law, Ronald Green ("Green") served as Vice-President. The Board of Directors consisted of friends and other members of the Falk family, including Leonard Stern ("Stern"), president and chairman of the Hartz Mountain Corporation ("Hartz"), who was, at the time, Falk's son-in-law.

In its early years, FFF, which was in the business of textile manufacturing, received financial support from Hartz through the auspices of Stern. During the incipient years of the corporation, Falk was apparently quite involved in FFF, though he continued to have other business activities. From 1970 to 1974, Falk took no salary from FFF, nor did he receive any dividends on his preferred stock. In late 1973, Falk entered into discussions with officers and directors of FFF about providing Falk with a regular salary and providing him and his wife with a deferred compensation plan. On November 1, 1973, Falk entered into an Employment and Deferred Compensation Agreement ("Agreement") with FFF. The Agreement provided that Falk was to receive a salary of $25,000 per year, adjusted annually for inflation. Further, the Agreement provided that after his retirement, Falk was to received deferred compensation in amount equal to the salary which he received while employed. In addition, Falk's wife, plaintiff Charlotte Falk, was to receive the same payments for up to 15 years should Falk predecease her. Defendant does not challenge the existence or validity of the Agreement.

In 1974, FFF began looking for beams and racks, items used to hold yarn in the textile manufacturing process. Approximately 2000 beams and 500 racks, all in a used condition, were located. The beams and racks were purchased not by FFF, but by F.L.S. Corporation ("F.L.S."), a compa-

ny in which Falk was one of three partners. F.L.S. then rented those beams and racks to FFF.

The company appears to have run smoothly until 1981. In that year, Stern was divorced from Falk's daughter, and Stern turned over his shares and, apparently, his seat on the FFF Board of Directors, to his ex-wife, Judith Peck. Falk claims that his (Falk's) role at FFF increased after 1981, due to the departure of Stern from the company's Board, Affidavit of Charles Falk, sworn to on February 23, 1989 ("Falk Aff."), ¶ 9, though Green and Asher Lans ("Lans"), who was secretary of FFF, challenge that claim. Affidavit of Ronald Green, sworn to on April 3, 1989 ("Green Aff."), ¶ 12; Affidavit of Asher B. Lans, Esq., sworn to on April 3, 1989 ("Lans Aff."), ¶ 16. Indeed, Lans asserts that Falk's role in the operation of FFF diminished noticeably after 1978. Lans Aff., ¶¶ 11, 12, 15.

Nonetheless, in 1981, Falk, who had not taken a salary between 1977 and early 1981, began to receive approximately $100,-000 a year in salary, the same salary then being paid to Michael Falk and Green. There is substantial dispute between the parties as to whether that increased salary was duly authorized by the Board, and, if it was not, whether it was properly granted by Michael Falk as president and CEO. Also in 1981, the lease agreement between FFF and F.L.S. for rent of beams and racks was renewed at a significantly higher rent. In 1978, Falk had become the sole general partner in F.L.S., and his grandchildren were the sole limited partners. There is again a dispute between the parties as to whether the extension of the lease agreement was properly approved by the Board. In 1981 Falk also began to receive end of year bonuses from FFF. Apparently, the executive officers of FFF had been receiving bonuses since 1979. Falk received a bonus identical to that received by Green and Michael Falk in 1981, 1982, and 1983. Bonuses were also paid in 1984 and 1985, but Falk did not receive these payments.

The ownership and control of FFF changed in 1985 when Stern, along with Green and others, seized control of FFF and dismissed both Falk and Michael Falk. The company was subsequently liquidated, and the company now exists solely in the form of a liquidating trust under the laws of Nevada. Salary payments to Falk were ceased at the time of his dismissal by the new ownership, and that new ownership has refused to make any deferred compensation payments under the Agreement.

Falk and his wife filed this action in late 1987, alleging his right to deferred compensation dating from his dismissal in 1985, and also demanding payment of the bonuses allegedly due him from 1984 and 1985. Defendant responded by filing fourteen counterclaims against Falk, alleging that he breached his fiduciary duty, conducted self-dealing, wasted corporate assets, and deprived FFF of a corporate opportunity through the lease arrangement between FFF and F.L.S. Defendant further alleges damages from Falk's refusal to remove the beams and racks from FFF property, and also accuses Falk of breach of fiduciary duty and self-dealing in allegedly receiving unauthorized excess compensation beginning in 1981. Plaintiffs have now moved pursuant to Fed.R.Civ.P. 56 for dismissal of defendant's counterclaims. Defendant has cross-moved for partial summary judgment dismissing the second and fourth claims in the Amended Complaint. The Court will address these motions in turn.

## DISCUSSION

### A) Standard for Summary Judgment

Both sides have moved for relief under Fed.R.Civ.P. 56. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." " '[A] motion for summary judgment should be granted only "when, viewing the record in the light most favorable to the non-moving party, the evidence offered demonstrates that there is no genuine issue of fact and that the moving party is entitled to judgment as a matter of law." ' " *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1559 (2d Cir.1989), *quoting Pension Benefit Guaranty Corp. v. LTV Corp.*, 875 F.2d 1008, 1015 (2d Cir.1989), *quoting Cinema North Corp. v. Plaza at Latham Associates*, 867 F.2d 135, 138 (2d Cir.1989).

The substantive law governing the case will identify those facts which are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.... While the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are crucial and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must then determine whether there does indeed exist a genuine issue as to any material fact: "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102 (2d Cir.), *cert. denied sub nom. Lipton v. R.C. Bigelow, Inc.*, —— U.S. ——, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), *quoting* Fed.R.Civ.P. 56(c). *See also Trebor Sportswear Co. v. The Limited Stores, Inc.*, 865 F.2d 506 (2d Cir.1989). However, Rule 56 does not require that the moving party support its motion with affidavits or other similar materials which negate the opponent's claim. Rather, "the motion may, and should, be granted so long

as what is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2553. The burden on the moving party will be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554.

Indeed, once a motion for summary judgment is properly made, the burden then shifts to the non-moving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Anderson, supra,* 477 U.S. at 250, 106 S.Ct. at 2511. Because the District Court must determine "whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved in favor of either party," *id.*—the non-moving party must produce, at the summary judgment stage, "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* While the Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought," *Heyman v. Commerce and Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975) (citations omitted), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted).

Ultimately, "[i]n considering the motion, the court's responsibility is not to resolve disputed issues of fact, but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), *citing Anderson, supra,* 477 U.S. at 247–50, 106 S.Ct. at 2509–11.

## B) *Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs have moved for summary judgment pursuant to Fed.R.Civ.P. 56(b) on defendant's fourteen counterclaims. Rule 56(b) allows a party against whom a claim or counterclaim has been interposed to move for summary judgment on all or part of that claim with or without supporting affidavits. Plaintiffs assert that counterclaims one through ten and twelve through fourteen are time barred, and that counterclaim eleven is without merit and should thus be dismissed.

■ The first ten counterclaims pertain to Falk's activities in relation to the lease of beams and racks to FFF by F.L.S. Specifically, defendant alleges that Falk breached his fiduciary duty, committed waste and mismanagement, deprived FFF of a corporate opportunity, committed self-dealing, and converted FFF's assets in relation to the beam and rack lease.

Plaintiffs assert that these counterclaims all arise out of the beam and rack lease which was signed in 1974 and allegedly renewed in 1981. According to plaintiffs, any claims relating to the lease or its renewal must be deemed to have accrued on the date of the lease or the renewal. Since the claims are governed by New York State's six year statute of limitations for such claims, plaintiffs argue that the counterclaims are not timely because the latest that such claims could have been brought was May 1987, six years after the lease was renewed. Since this action was not commenced until December 1987, plaintiffs assert that the statute of limitations had expired prior to the effective date of the counterclaims.

Defendant raises two defenses to plaintiffs' invocation of the statute of limitations. First, defendant asserts that Falk's acts in contradiction of FFF's interests should be viewed as on-going to the date of Falk's removal from his position with FFF, and should not be fixed as single acts of wrong-doing to be timed from the date of the lease and its renewal. Second, defendants argue that the actions alleged in the

first ten counterclaims should be viewed as part of the same transaction and occurrence as plaintiffs' claims, thus making the counterclaims immune from the imposition of the statute of limitations.

N.Y.Civ.Prac.L. & R. ("CPLR") 203(c) states in part, "[I]f the defense or counterclaim arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends, it is not barred to the extent of the demand in the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed." CPLR 203(c) is derived from the equitable doctrine of recoupment. *SCM Corporation v. Fisher Park Lane Co.*, 40 N.Y.2d 788, 791, 390 N.Y.S.2d 398, 401, 358 N.E.2d 1024, 1026 (1976). A party wishing to bring a counterclaim within the protection of CPLR 203(c) must show that the counterclaim "seek[s] a recovery-back predicated on some act or fact growing out of the matter constituting the cause or ground of the action brought," and does not seek a monetary set-off based on separate and distinct claims. *Id.*, 40 N.Y.2d at 791, 390 N.Y.S.2d at 401–02, 358 N.E.2d at 1026–28. *See also, First Fidelity Bank v. Companhia de Navegacao*, 637 F.Supp. 1182 (S.D.N.Y.1986).

It is incumbent upon a party seeking to have claims exempted from the statute of limitations under CPLR 203(c) to demonstrate that the counterclaims fall within the purview of the rule. *Rochester Health Network, Inc. v. Rochester Hospital Service Corp.*, 123 A.D.2d 509, 510, 507 N.Y.S.2d 100, 101 (4th Dep't 1986). Defendant has failed to make such a showing. No where in the answer to the amended complaint does defendant allege that the counterclaims arising from the beam and rack lease arise from the same transaction or occurrence as plaintiffs' claims for breach of Falk's employment contract. Further, while defendant makes an extensive argument that its counterclaims for repayment of alleged over-payments of salary to Falk are covered by CPLR 203(c), defendant commits only two paragraphs, and cites no cases, in support of its argument that lease counterclaims should similarly be covered

by CPLR 203(c). Defendant's Memorandum of Law at 58; Defendant's Reply Memorandum of Law at 7. Defendant pleads that Falk's allegedly improper actions should be viewed as affirmative defenses to Falk's breach of contract claims, and also implicitly pleads that the damages from those leases should be viewed as a set-off to plaintiffs' contract claims. Defendant does not plead in the complaint, implicitly or explicitly, that these counterclaims are interposed as an effort at recoupment. Accordingly, defendant has not made a sufficient showing that the first ten counterclaims are protected from application of the statute of limitations by CPLR 203(c).

Having found that defendant's counterclaims for damages based on the rack and beam lease are not protected by CPLR 203(c), the Court turns to the question of whether those counterclaims are time barred. The parties apparently agree that all of the first ten counterclaims are governed by a six year statute of limitations. Plaintiffs assert that all the claims arising under the beam and rack lease and their renewal must be viewed as fixed in time on the date of the original lease and on the date of the renewal. Defendant argues that the Court must view the accrual of the actions under the beam and rack lease as ongoing over the period of the lease since payments were made monthly over the period, each payment adding to the harm inflicted on defendant.

■ As a preliminary matter, the Court must dismiss counterclaims seven through ten as time barred on the face of the complaint. Paragraph 41 of the complaint states "Between in or about [sic] May 1974, Charles Falk caused FFF to pay rental payments to F.L.S. for beams which were not used by FFF." On its face, the complaint that the only date complained of is May 1974. Applying the six year statute of limitations to this claim, it must be dismissed as time barred. Counterclaims eight through ten reallege and rely on paragraph 41, and accordingly are infected by the same deficiency. While the Court must conclude that the language of paragraph 41 is the result of clerical error, the

Court cannot find a pleading of continued harm that is not there, and, accordingly, must dismiss counterclaims seven through ten.

The remaining counterclaims relate to the lease of the beams and racks actually used by defendant. The lease was originally entered into in 1974 and was renewed in 1981. The renewal increased the lease rate approximately 80%. Green Aff., ¶ 43. It appears that the renewal was never formally approved by the FFF Board of Directors. There is also some dispute as to whether all Board members were apprised of the renewal at the time it was entered into by Falk and Michael Falk.

■ Defendant has not differentiated in its counterclaims between the original lease and the renewal. Defendant appears to want the Court to consider the lease and renewal to be one continuous transaction for the purposes of assessing damages. The Court cannot agree with this interpretation. The original 1974 lease ran for seven years and expired by its own terms in 1981. It is true that the letter officially renewing the lease described said renewal as an extension. Falk Aff., Exhibit O. However, the terms were significantly different. While it appears that the same racks and beams that were the subject of the original lease were also the subject of the renewal, the rental rate increased substantially. Additionally, the original lease was formally approved by the Board, while the renewal was not, and, in fact, was apparently objected to by some members of the Board when they learned of it.

Accordingly, the Court finds that the original lease and the renewal were two separate transactions. For the purpose of the statute of limitations this means that the original lease is deemed completed on May 1, 1981, its expiration date. Thus, any claim for damages under the original beam and rack lease would have to have been brought by May 1, 1987, six years from the date of the expiration of the lease. Since the original claim in this case was not brought until December 1, 1987, defendant's counterclaims one through six must fail to the extent that they demand damages under the original 1974 rack and beam lease.[2]

■ Plaintiffs would have the Court find that any claim on the renewal would also have to have been brought by May 1, 1987, six years from the date the renewal became effective. Plaintiffs assert that harm from the renewal is fixed in time on the effective date of the renewal. The Court cannot agree. Plaintiffs rely on *Saylor v. Lindsley*, 302 F.Supp. 1174 (S.D.N.Y.1969) for the proposition that the statute begins to run from the date of the initial wrongdoing. *Saylor* is inapplicable to the situation now before the Court. In *Saylor*, the plaintiff was challenging two sales of interests in a corporation controlled by defendants. The harm occurred at the time of the sales. Once the sales were completed, the harm was similarly complete. Such is not the situation with FFF. Assuming for these purposes that the renewal was improper, every time FFF made a payment under the renewal it was harmed.

It is elemental that the effective date of counterclaims for the purposes of the tolling of the applicable statute of limitations related back to the date the original complaint was filed. Accordingly, there is no doubt that defendant's counterclaims survive on all payments made under the renewal made on or after December 1, 1981, six years before the complaint in this action was filed. The Court does find that claims on lease payments made prior to December 1, 1981 are time barred.[3]

---

**2.** The Court also notes that this is not a situation where defendant was not in a position to discover the alleged wrong-doing underlying the counterclaims until the original claim was brought. Stern and Green, who are apparently now the principals of FFF, have been affiliated with FFF since its founding, and both approved the original rack and beam lease as members of the FFF Board of Directors. Further, Stern and Green gained control of FFF in late 1985, still within the statute of limitations period, yet failed to bring any action against Falk on the lease or the renewal.

**3.** The Court further finds that this same logic would apply to counterclaims seven through ten if those claims had been properly pleaded.

Plaintiffs further argue that the Court should grant summary judgment on all of defendant's counterclaims arising out of the beam and rack lease and renewal because those transactions were approved, explicitly or implicitly, by the FFF Board of Directors. Since the only claims surviving plaintiffs' statute of limitations challenge are those relating to the renewal of the lease, the Court need not address plaintiffs' claim for summary judgment on counterclaims arising under the 1974 lease.

■ The Court cannot grant summary judgment on defendant's counterclaims arising under the 1981 renewal of the beam and rack lease. The Court finds that there is a material issue of fact in dispute as to whether the renewal of the lease was properly entered into by Michael Falk on behalf of FFF. Plaintiffs assert that all Board members were fully informed of the renewal and that they acquiesced to it by their silence. However, there is evidence before the Court in affidavits and deposition testimony, submitted by defendant, that not all Board members did approve of the renewal. Further, the Court finds that there is an issue of fact whether, under FFF's by-laws, the lease renewal had to be formally approved by the FFF Board, which plaintiffs concede it was not. Thus, summary judgment based on Board approval of counterclaims one through ten is denied.

■ Plaintiffs also challenge counterclaims eleven through fourteen on a variety of grounds. Counterclaim eleven alleges that FFF has been damaged by Falk's failure to remove the beams and racks from defendant's property after termination of the lease by FFF. Plaintiffs assert that summary judgment should be granted on this claim because the rack and beam lease on its face holds the lessee (FFF) responsible for the cost of removal. Plaintiffs' Memorandum of Law at 26. The Court denies summary judgment on this counterclaim. First, the Court notes that the lease relied on by plaintiffs in their motion, Falk Aff., Exhibit N, is on its face not between FFF and F.L.S., but between two other parties. Second, the Court notes that there is also a material issue of fact in

dispute as to whether the renewal, under which terms the racks and beams would have to have been removed, was properly approved by the FFF Board of Directors.

■ Finally, plaintiffs maintain that counterclaims twelve through fourteen, which allege that Falk received excessive salary payments after 1981, are time-barred to the extent that they include salary payments to Falk before December 1, 1981. Defendant asserts that CPLR 203(c) applies to these counterclaims. The issue is whether these counterclaims arose out of the same transaction and occurrence as plaintiffs' claims.

Defendant pleads these counterclaims as arising under the same Agreement as plaintiffs' claims. Defendant asserts that the substantial salary increase received by Falk in 1981 was in violation of the Agreement. It is essential to plaintiffs' claims that this increase was, in fact, valid under the Agreement, for if the increase was separate from the Agreement, not a part of it, then the deferred compensation clause in the Agreement would not apply to the salary received after 1981. It is clear that plaintiffs intend in their pleadings to argue that the 1981 salary increase was valid under the Agreement and that they are entitled to deferred compensation based on the post–1981 salary.

Unlike defendant's counterclaims relating to Falk's performance of his duties, the counterclaims relating to Falk's salary level go directly to the terms of the Agreement. Since the Agreement is the contract on which plaintiffs are suing, and counterclaims twelve through fourteen allege direct violations of those terms by over-payment, the Court finds that these counterclaims arise out of the " 'the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends.' " *Lincoln First Bank of Rochester v. Rupert*, 60 A.D.2d 193, 195, 400 N.Y.S.2d 618, 622 (4th Dep't 1977), *quoting Chevron Oil Company v. Atlas Oil of Utica, Inc.*, 28 A.D.2d 644, 645, 280 N.Y.S.2d 731, 733 (4th Dep't 1967). Accordingly, the Court deems that counterclaims twelve through fourteen are protect-

ed in their entirety from the running of the statute of limitations.

### C) Defendant's Motion for Summary Judgment

Defendant has moved for summary judgment on plaintiff's second and fourth claims which arise under N.Y.Labor Law § 198(1–a).[4] Defendant's challenge to plaintiffs' Labor Law claims is that Falk was not an "employee," as defined in the statute. Defendant relies on two separate grounds in arguing for judgment on the Labor Law claims. First, defendant alleges that, under the by-laws of FFF, Falk, as Chairman of the Board, was never an officer of FFF, but was simply a director, and as such was not an employee of the corporation. Second, defendant asserts that even if Falk was an officer, management-level employees are not protected under § 198(1–a).

■ The Court finds that there is a material issue of fact in dispute as to whether Falk was an employee of FFF or simply a director. There appears to be no dispute that under the original FFF by-laws, Falk was, as Chairman of the Board, an executive officer of the corporation. In November 1977, FFF was re-incorporated under the laws of Nevada, and new by-laws were prepared. The parties have submitted conflicting versions of those bylaws. Lans Aff., Exhibit A; Affidavit of Michael Falk, sworn to on April 17, 1989, Exhibit A. The two versions of the by-laws differ as to whether the Chairman of the Board remained an executive officer of the corporation after the re-incorporation. The Court is not in a position on the record before it to make a judgment as to which set of by-laws is valid. Accordingly, the Court must find the existence of a genuine issue of fact as to whether Falk was an officer of FFF after November 1977.

■ Defendant's second challenge to plaintiffs' claims under § 198(1–a) is that the statute is not designed to protect executive officers, but is intended to protect only non-supervisory personnel. The definition of "employee" in § 198(1–a) has been a topic for disagreement among the courts that have been faced with cases arising under the statute. The courts have developed two different approaches to the term "employee" within the statute. Some courts have defined "employee" to mean all persons employed for hire. *See, e.g., Gerlach v. The Horn & Hardart Co.*, 683 F.Supp. 342 (S.D.N.Y.1988); *Dean Witter Reynolds, Inc. v. Ross*, 75 A.D.2d 373, 429 N.Y.S.2d 653 (1st Dep't 1980); *Klepner v. Codata Corp.*, 139 Misc.2d 382, 527 N.Y.S.2d 158 (Sup.Ct.1988), *aff'd*, 150 A.D.2d 994, 542 N.Y.S.2d 1004 (1st Dep't 1989); *Maggione v. Bero Construction Corp.*, 106 Misc.2d 384, 431 N.Y.S.2d 943 (Sup.Ct. 1980). Other courts have taken a narrower view of employees, finding that "employee" means only non-supervisory employees. *See, e.g., Gurga v. Carville Leather Co., Inc.*, 145 A.D.2d 712, 534 N.Y.S.2d 837 (3rd Dep't 1988); *Conticommodity Services, Inc. v. Haltmier*, 67 A.D.2d 480, 416 N.Y.S.2d 298 (2nd Dep't 1979). Further, at least one court has held that the term "wages" in the statute refers only to compensation for non-supervisory employees, and thus the statute can cover only non-supervisory personnel. *Williams v. AGK Communications, Inc.*, 143 Misc.2d 845, 542 N.Y.S.2d 122, 124 (Sup.Ct.1989). In reaching this opinion, the *Williams* court explicitly rejected the contrary holdings in *Gerlach* and *Klepner.*

The Court notes the conflict regarding the definition of employee, and the lack of any guidance on this issue from the New York Court of Appeals. In the absence of such guidance, the Court has reviewed the statute and the existing case law and believes that "employee" is a broad term that includes all personnel for hire, and not simply non-supervisory personnel. Those cases which have limited the definition of

---

**4.** N.Y.Labor Law § 198(1–a) states:
In any action instituted upon a wage claim by an employee or the commissioner in which the employee prevails, the court shall allow such employee reasonable attorney's fees and,

upon a finding that the employer's failure to pay the wage required by this article was willful, an additional amount as liquidated damages equal to twenty-five percent of the total amount of wages found to be due.

"employee" have focused on § 190(6) which defines the term "commission salesman" to be exclusive of supervisory or managerial employees. The Court finds no evidence that the limitation included in § 190(6) was intended to apply to any type of employee other than "commission salesman". Further, the Court does not believe that the term "wages" can be limited to monetary remuneration received by non-supervisory employees. There is nothing in the definition of "wages" contained in § 190(1) that lends itself to such a narrow reading. The statute defines "wages" as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a piece, commission or other basis." The limitation on wages contained in § 191, relied on by the Court in *Williams*, is explicitly exempted from application to the remainder of Article 6, including § 198, by § 190(1). Accordingly, the Court finds that wages for the purpose of §§ 193 and 198 includes salary and other benefits. Thus, defendant's motion for summary judgment on plaintiffs' Labor Law claims must be denied.

## CONCLUSION

Plaintiffs' motion for partial summary judgment is granted in part and denied in part. Counterclaims seven through ten are dismissed. Counterclaims one through six are dismissed to the extent they claim damages prior to December 1, 1981.

Defendant's cross-motion for summary judgment is denied.

The parties are ordered to appear for a status conference before the Court on April 20, 1990 at 2:00pm in Courtroom 36 of the United States Courthouse, New York, New York.

SO ORDERED.