■ ISRAEL WEINSTOCK, Appellant, v ESTHER WEINSTOCK,

Respondent.—In an action for a divorce and ancillary relief, the plaintiff husband appeals, as limited by his brief, from so much of an order of the Supreme Court, Queens County (Modugno, J.H.O.), dated March 27, 1989, as, *inter alia,* denied his application for a conversion divorce, dismissed the cause of action for that relief, and set aside the parties' separation agreement.

Ordered that the order is affirmed insofar as appealed from; and it is further,

Ordered that the stay imposed by order of this court dated May 9, 1989, is vacated; and it is further,

Ordered that the respondent is awarded one bill of costs.

The husband, an attorney, contends that the separation agreement entered into by the parties on January 17, 1983, was fair and reasonable and therefore, that the trial court improperly set it aside as unconscionable. We disagree.

"[A]n unconscionable bargain has been regarded as one ' "such as no [person] in his [or her] senses and not under delusion would make on the one hand, and as no honest and fair [person] would accept on the other" ' *(Hume v United States,* 132 US 406, 411), the inequality being ' "so strong and manifest as to shock the conscience and confound the judgment of any [person] of common sense" ' *(Mandel v Liebman,* 303 NY 88, 94)" *(Christian v Christian,* 42 NY2d 63, 71). Based on the foregoing standard, the instant agreement is patently unconscionable. By the terms of paragraph 16 of the agreement, the defendant wife, who had been married to the plaintiff for 22 years at the time she signed the agreement, waived any and all rights that she might have with respect to equitable distribution, thereby relinquishing any share in the plaintiff's assets, which are conservatively estimated as exceeding $2,000,000. Pursuant to the agreement, the defendant's receipt of maintenance was conditioned on her being employed and simultaneously taking at least six college-level credits, and further limited the plaintiff's obligations by providing that, even if those stringent requirements were met, he would only have to pay the difference between the defendant's other income and the sum of $15,000 per year. Still further evidence of the agreement's unconscionability is found in the provision requiring the defendant to transfer her share of the jointly held marital home to the plaintiff and granting the plaintiff "an irrevocable Power of Attorney", empowering him to sign the defendant's name to any "documents, checks, deeds, leases [and] instruments * * * required to effectuate

the intent expressed * * * herein * * * that the Wife shall return to the Husband any assets held by her and shall be entitled to retain only those [personal] items set forth [in the agreement]". After the agreement was signed, the plaintiff induced the defendant to cosign a loan agreement for a mortgage in the amount of $85,000, on a second house purchased by him. He thereafter, kept for himself, the entire proceeds of this transaction.

Of particular significance is the testimony of Dr. Norman J. Levy, the defendant's treating psychiatrist. Concerning the dynamics of the parties' relationship, Dr. Levy rendered the following opinion:

"I felt it was a very strange relationship.

"I felt that Israel Weinstock was the dominant person who was controlling and influencing, if you will, his wife's behavior.

"I think she was very self-effacing and very compliant, most of the time giving in, yielding, at the time that we started working together. And I think that continued for quite some time.

"Toward the end of the time we worked together it seemed that she was beginning to become a little more assertive".
Dr. Levy further characterized the defendant as very trusting of the plaintiff and emotionally dependent on him. In the course of treatment, the defendant had never expressed any desire to be financially independent of her husband. In Dr. Levy's opinion, the defendant was emotionally capable of signing an agreement to relinquish all of her property, if she was told that said agreement would be an act of love or an act of trust towards her husband.

The plaintiff's own direct testimony indicates a fatal lack of disclosure concerning his financial affairs. When confronted with the defendant's testimony that, even after the separation agreement had been executed, the bulletin of the temple to which they belonged listed the parties as joint donors of a $1,000 contribution, the plaintiff replied that it was the office staff of the temple that had made that designation. When questioned regarding the veracity of the defendant's testimony that the plaintiff had conferred with her regarding the amount of the 1983 contribution, the plaintiff made the following reply: "No, I did not ask her. She knew nothing about my finances. Why am I going to ask her?" Moreover, the record is replete with evidence of the defendant's diminished capacity due to her periods of dependence upon Valium and alcohol.

Stated succinctly, the agreement is so manifestly unfair, and the apparent product of coercion and overreaching on the part of the plaintiff, that it was properly set aside *(Peters v Peters,* 150 AD2d 763). We conclude that the separation agreement was void *ab initio,* and that it may not serve as the predicate for a conversion divorce *(Angeloff v Angeloff,* 56 NY2d 982; *Howard v Howard,* 134 AD2d 571). Accordingly, the order is affirmed insofar as appealed from. Brown, J. P., Kunzeman, Eiber and Balletta, JJ., concur.