OPINION OF THE COURT
Phyllis Gangel-Jacob, J.
In this long-pending and much litigated matrimonial action, plaintiff husband moves for partial summary judgment dismissing defendant wife’s second counterclaim which seeks a judgment which rescinds and vacates in its entirety the pre *750 marital agreement which the parties signed in 1980. Defendant wife’s cross motion which seeks certain discovery, expert fees and counsel fees has been resolved and withdrawn.
Plaintiff contends that an action for rescission of a prenuptial agreement is an equitable remedy which is controlled by a six-year Statute of Limitations (CPLR 213 [1]); also that any challenge to the validity of a premarital agreement based on fraud must be brought within six years or within two years after the fraud is, or should have been discovered.
The important question raised, and I believe as yet undecided by our courts is should the Statute of Limitations be tolled during the marriage because lawsuits between spouses are not favored? The Uniform Premarital Agreement Act, which has not been adopted in New York State, and numerous other authorities answer the question in the affirmative. This court agrees.
The parties to this divorce action entered into a premarital agreement on August 27, 1980. Four days later, on August 31, 1980, they were married. A child was born in September of 1983. Plaintiff moved out of the marital home on or about March 1, 1988, and commenced this action for divorce in December 1988. Defendant’s June 13, 1989 answer to plaintiff’s complaint essentially denies the allegations and seeks a judgment dismissing the complaint or, in the alternative, equitable distribution, maintenance, child support, joint custody and other relief. An amended answer dated February 12, 1990 interposes two counterclaims. The first seeks a judgment of divorce in favor of defendant on the ground of plaintiff’s abandonment of defendant on or about March 1, 1988. The second seeks a judgment declaring the premarital agreement null and void.
On the basis that an antenuptial agreement is a contract governed by the six-year Statute of Limitations applicable to contract actions contained in CPLR 213 (2), and that actions in equity (e.g., rescission) are governed by the omnibus provision of CPLR 213 (l),[1] plaintiff asserts that as a matter of law partial summary judgment should be granted dismissing defendant’s second counterclaim as barred by the six-year Statute of Limitations contained in CPLR 213. Plaintiff relies upon the proposition that defendant’s right to seek rescission *751 accrued on August 27, 1980 when the premarital agreement was fully executed by the parties (Pacchiana v Pacchiana, 94 AD2d 721). Since defendant’s second counterclaim was not brought until 1990, plaintiff claims that as a matter of law defendant’s second counterclaim, brought nine and one-half years after her cause of action accrued, is time barred.
Plaintiff further contends that defendant has not pleaded any material facts that would operate to toll the statute. Distilled to its essence, plaintiff’s argument is that any challenge to the validity of the premarital agreement on fraud grounds is time barred because (1) any facts related to allegations of fraud were sufficiently available to defendant more than two years prior to the assertion of her counterclaim (see, CPLR 213 [8]; 203 [f]), and (2) any constructive fraud that might be alleged is likewise barred because any such claim is governed by the six-year statute applicable to equity actions in general (CPLR 213 [1]) and is deemed to have accrued upon the commission of such fraud (the signing of the premarital agreement, which occurred more than six years ago) rather than the discovery of the fraud. Further, that there exist no grounds upon which the statute could be tolled by reason of defendant’s insanity or over-all inability to function in society or by reason of duress since these conditions either did not exist or did not continue to exist once the premarital agreement was signed or the parties married, more than six years ago.
There is no question that a premarital agreement is a contract (Matter of Lemle, 30 AD2d 785 [1st Dept 1968]) and that an action for rescission is governed by the "residual” provision of CPLR 213 (1) (see, Siegel, NY Prac § 36, at 42 [2d ed]). Plaintiff’s counsel correctly recognizes that the controlling issue is the time when defendant’s right to seek rescission of the premarital agreement began to run against her right to bring her cause of action. However, it is at this point where plaintiff’s argument parts company with the principles embodied in the long-established public policy of this and other jurisdictions concerning marital relationships. Based primarily upon principles generally applicable to commercial and other arms-length transactions, plaintiff makes the blanket assumption that defendant’s cause of action accrued and the statute began to run, unless otherwise tolled by the limited factors enumerated, upon execution of the premarital agreement.
Here, the parties had what appears to be a viable marriage from August 31, 1980 until on or about March 1, 1988. They *752 lived together as husband and wife during this time and had a child in September 1983. On these facts, applying plaintiffs view of the law, defendant would be compelled, while the parties were still living together as husband and wife in an ongoing marital relationship and before the child of the marriage was even three years old, to review and challenge the premarital agreement or lose that right forever, whether or not such a challenge would damage or more likely destroy, the marital relationship. Such a requirement would encourage lawsuits between spouses, dissention and perhaps destruction of the marriage rather than enhancement of the marital relationship and would surely be repugnant to the public policy of this State.
In New York, as in most other jurisdictions, there has been an unerring policy to preserve the marital relationship, and those actions that tend to encourage the alteration or dissolution of a marriage are disapproved in the law (e.g., Stahl v Stahl, 221 NYS2d 931, 939 [Sup Ct, NY County 1961], mod on other grounds 16 AD2d 467 [1st Dept 1962]; Kessler v Kessler, NYLJ, Sept. 22, 1989, at 24, col 6 [Sup Ct, Kings County]; Matter of Fleischmann, 64 Misc 2d 924 [Sur Ct, NY County 1970]; see also, Matter of Wilson, 66 AD2d 893 [2d Dept 1978], affd 50 NY2d 59; cf., Garlock v Garlock, 279 NY 337 [1939]). This policy has found expression by the State Legislature in the enactment of General Obligations Law § 5-311 which (except for separation or settlement agreements reached at a time when a marriage is no longer viable) declares void any agreement between a husband and wife which, by its terms, requires the dissolution of the marriage or provides for the procurement of grounds for divorce (see, Domestic Relations Law § 236; cf., 2 Lindey, Separation Agreements and Antenuptial Contracts § 36.01, at 33 [rev ed, 1992 Supp] [" 'Spouses who separate with the intent to divorce no longer occupy a position of trust’ ”]).
In Zuch v Zuch (117 AD2d 397 [1st Dept 1986]), an action for divorce in which the wife sought to impress a constructive trust with respect to the marital residence, the trial court determined that the cause of action was barred by a six-year Statute of Limitations. Writing for a unanimous court, the Honorable Bentley Kassal said (supra, at 404-405): "We * * * disagree * * * Such a holding would require a spouse to take affirmative action to preserve claims to potential marital assets even before there had been any hint of marital discord. That flies in the face of logic and would be against public *753 policy * * * This would critically undermine the underlying purpose of the equitable distribution statute and the vitality of marriages generally.”
Premarital agreements fairly reached generally are favored in the law "as conducive to the welfare of the parties and the marriage relationship as they tend to prevent strife, secure peace, adjust, settle and generally dispose of rights in property, controversy over which is regarded as one of the most prolific sources of marital discontent and rupture of the bonds of matrimony” (2 Williston, Contracts § 270B, at 160 [3d ed]).
While agreements between spouses are deemed to be contractual in nature, because of the status and relationship of the parties such contracts require the utmost good faith and are subject to rigid scrutiny concerning the fairness and propriety of their negotiation and execution (see, Christian v Christian, 42 NY2d 63 [1977]; cf., Domestic Relations Law § 236 [B] [3]). This is equally true of premarital agreements (e.g., Matter of Phillips, 293 NY 483, 491 [1944]; Matter of Sunshine, 51 AD2d 326 [1st Dept 1976]). "The parties [to an antenuptial agreement] do not stand at arm’s length to each other; theirs is a relationship of the highest trust and confidence and these considerations will govern the determination of their rights thereunder” (2 Williston, op. cit., at 161).
Thus New York courts traditionally have recognized that premarital and other marital agreements must be viewed differently from other types of contracts in which the parties are strangers to each other (see, Christian v Christian, supra, at 65; Garlock v Garlock, supra, at 340; Hungerford v Hungerford, 161 NY 550, 553 [1900]; Matter of Lemle, 55 Misc 2d 640, 642, read on other grounds 30 AD2d 785, supra), and the rules appropriate to commercial agreements cannot strictly be applied to the marital situation. Moreover, premarital agreements are entered into in contemplation of marriage and the consideration for the agreement is the marriage itself. Such an agreement does not become effective until the parties marry (2 Williston, op. cit., at 158-161; see, Uniform Premarital Agreement Act [UPA] § 4, 9B ULA 375 [1987]; 3 Lindey, Separation Agreements and Antenuptial Contracts § 90.17, at 90-130 [rev ed]).
In the face of such long-standing and strong policy considerations, it would be anomalous to say that, irrespective of whether the marriage relationship is viable and continuing, the husband and wife must review their premarital agreement *754 and assume adversarial positions with respect thereto within the first six years of their marriage or forever lose their right to challenge the agreement. Indeed, during the course of a continuing marital relationship, and most likely more than a mere six years down the road, it is conceivable that the parties would change their agreement, as often happens with testamentary dispositions. A surviving spouse’s challenge to a premarital agreement and right to claim under a deceased spouse’s estate or to abrogate a waiver of a statutory right of election (see, EPTL 5-1.1) are routinely entertained by the courts whatever the length of the marriage, it being doubtful that any such claims would otherwise have matured during the deceased spouse’s lifetime (see, Matter of Liberman, 4 AD2d 512 [1st Dept 1957]; Matter of Duckman, 110 Misc 2d 575 [Sur Ct, Monroe County 1981]; see also, Lewis v Lewis, 59 Misc 2d 525 [Civ Ct, NY County 1969]). It would be illogical that the "event of divorce” clause and "the event of death” clause in the very same premarital agreement should be controlled by different Statutes of Limitation.
It would appear that the public policy of this State demands that the six-year Statute of Limitations applicable to challenges to premarital agreements be tolled until the parties physically separate or until an action for divorce or separation is commenced, or upon the death of one of the parties. This is consistent with the view of a majority of the States. As set forth in 3 Lindey (op. cit., § 90.16, at 90-125): "Whatever statute [of limitations] may be applicable in a particular jurisdiction, the general rule is that the statute is tolled during the parties’ marriage, as suits between spouses are not favored.” (See also, 54 CJS, Limitations of Actions, § 111, at 149.) Similarly, section 8 of the UPA, which has been substantially adopted in 18 States,[2] provides: "Any statute of limitations applicable to an action asserting a claim for relief under a premarital agreement is tolled during the marriage of the *755 parties to the agreement. However, equitable defenses limiting the time for enforcement, including loches and estoppel, are available to either party.”
Pacchiana v Pacchiana (supra), a preequitable distribution case, is not to the contrary. In that case the wife who, the night before the marriage signed a premarital agreement which waived her right of election, sought rescission on the sole ground of duress. The issue of the tolling of the statute during the marriage was not addressed, but the wife claimed that the parties’ premarital agreement remained executory until the death of either spouse. In these circumstances the Pacchiana court narrowly found that the right to rescind on the ground of duress accrues upon the execution of the contract and rejected the contention that a premarital agreement remains executory until the death of either spouse and that no cause of action to void it could accrue until then.
Accordingly, I hold that the six-year Statute of Limitations on defendant’s counterclaim for rescission of the premarital agreement entered into by plaintiff and defendant on August 27, 1980 was tolled during the time the parties lived together in a continuing marital relationship, and that the statute did not begin to run until March 1988, when the marriage had irretrievably broken down and the parties started living separate and apart. Since only two years elapsed from that time to the time defendant interposed her counterclaim, her action is timely.
Plaintiff’s motion for judgment dismissing defendant’s second counterclaim as time barred is denied in its entirety.

. CPLR 213 (1) provides:
"The following actions must be commenced within six years:
"1. an action for which no limitation is specifically prescribed by law”.

. Ariz Rev Stat Annot §§ 25-201 — 25-205; Ark Code §§ 9-11-401 — 9-11-412; Cal Civ Code §§ 5300-5317; Colo Rev Stat Annot § 14-2-301; Haw Rev Stat Annot §§ 572D-1 — 572D-11; ILL Annot Stat, ch 40, ¶¶ 2601-2611; Iowa Code Annot §§ 596.1-596.12; Kan Stat Annot §§ 23-801 — 23-811; Me Rev Stat Annot, tit 19, §§ 141-151; Mont Code Annot §§ 40-2-601 — 40-2-610; Nev Rev Stat Annot §§ 123A.010-123A.100; NJ Stat Annot §§ 37:2-31 — 37:2-41; NC Gen Stat §§ 52B-1 — 52B-11; ND Code §§ 14-03.1-01 — 14-03.1-09; Ore Rev Stat §§ 108.700-108.740; RI Gen Laws Annot §§ 15-17-1 — 15-17-11; SD Code §§ 25-2-16 — 25-2-25; Tex Fam Code §§ 5.41-5.50; Va Code §§ 20-147 — 20-154. Only one State, New Jersey, has not included the requirements of section 8 (3 Lindey, op. cit., § 90.17, at 90-126).