OPINION OF THE COURT
John P. DiBlasi, J.
In Majauskas v Majauskas (61 NY2d 481, 485-486 [1984]), the Court of Appeals announced the rule that "[v]ested rights in a noncontributory pension plan are marital property to the extent that they were acquired between the date of the marriage and the commencement of a matrimonial action”. The question to be resolved on these summary judgment motions is whether defendant’s failure to inform plaintiff, prior to their execution of a pre-Majauskas separation agreement, that his pension rights, whose existence were known to plaintiff, were marital property subject to equitable distribution, constitutes fraud and breach of a warranty of disclosure of assets, which would require the award of damages or rescission of the separation agreement.
Plaintiff in this action married defendant on May 6, 1972. At the time of their marriage, both parties were employed by the New York City Police Department (NYPD), defendant as a sergeant, and plaintiff as a police administrative aide (PAA). Plaintiff ceased her PAA employment in May 1973, but defen *136 dont remained with the NYPD and rose to the rank of captain during the parties’ marriage.
On March 25, 1982, as a result of differences between them, the parties, each separately represented by counsel of their own choosing, entered into the separation agreement which is at the center of this action. Included in the separation agreement was a term entitled "Warranty” (the warranty provision), which stated that "We agree that we are possessed of the marital property set forth and divided below. Each of us hereby warrants to the other that neither of us is now possessed of any marital property of any kind or description, other than specifically listed herein. If it later appears that either of us now own any other property the other may have an interest in, or that one of us had made, without consent of the other, any gift or transfer of marital property other than that set forth below, the warrantor agrees to pay to the other fair market value of the warrantee’s interest on the date of this agreement. However, if it is determined that such property was intentionally concealed or withheld from the other, then the warrantor agrees to pay the other the fair market value of the warrantee’s interest on the date of this Agreement, the date the warrantor’s ownership is discovered by warrantee, or on the date the gift was made, at the option of the warrantee, together with reasonable attorney’s fees and court costs. This agreement shall not impair the availability of any other remedy.” (Emphasis added.) Both parties agree that in the separation agreement defendant did not specifically list any pension rights that he possessed at the time the agreement was executed.
An amendment to the separation agreement was executed by the parties on February 22, 1984. Both were again represented by attorneys of their choosing. The amendment did not provide for any further distribution of marital property, and in fact, "confirmed in all respects” the provision of the original agreement entitled "division of property”, of which the warranty provision was a part. (Amend to separation agreement, at 2.)
On October 10, 1984, a divorce judgment was entered which incorporated the terms of the separation agreement and the amendment. Apparently both parties complied with the terms of the separation agreement and the amendment during the years that followed.
In June 1993, approximately nine years after the divorce *137 judgment was entered, plaintiff commenced this action against defendant seeking damages in the amount of $500,000, rescission of the separation agreement and an award of an interest in defendant’s NYPD pension. In her complaint, plaintiff set forth causes of action alleging breach of the warranty provision (counts 1, 5 of the complaint) and fraud in the inducement (counts 2, 3, 4). Essentially, plaintiff contended that defendant had intentionally and/or negligently concealed from her the fact that he had pension rights when he entered into the separation agreement.
In his answer, defendant set forth as affirmative defenses that plaintiff’s claims were barred by the Statute of Limitations and loches, and that plaintiff had waived any claim to further equitable distribution. Defendant also counterclaimed for a share of plaintiff’s pension, and child support payments, the latter based upon his claim that the parties’ three children were residing with him, and not with plaintiff.
Following disclosure procedures, and in particular, her examination before trial (EBT), plaintiff filed the instant summary judgment motion, contending that no factual issues exist in this case because it is undisputed that defendant, in violation of the warranty provision, failed to disclose his pension rights.[1] Defendant not only opposes this motion, but argues that he is entitled to summary judgment dismissing plaintiff’s complaint and granting him relief as to his counterclaims. On this motion defendant relies upon his defenses that plaintiff’s causes of action are time barred at law and in equity, and that plaintiff waived all rights to equitable distribution.
Defendant’s claim of waiver by plaintiff has only limited merit. This argument is based entirely on language in the separation agreement which states, in effect, that the agreement was executed after full financial disclosure by the parties, and that each party waived his or her rights to equitable distribution. Obviously, if defendant was guilty of defrauding *138 plaintiff in the inducement of the separation agreement, that agreement would be voidable, and if timely challenged, plaintiff would not be barred from relief by those contractual terms. (See, Matter of Gordon v Bialystoker Ctr., 45 NY2d 692, 698 [1978] ["fraud vitiates all contracts”].) Thus, plaintiff’s waiver of equitable distribution is binding only to the extent that the court finds that the separation agreement was not fraudulently induced.
As to plaintiff’s causes of action alleging a breach of the warranty provision, it is clear that plaintiff’s action is untimely. The separation agreement at issue is a contract under New York law. (See, Borax v Borax, 4 NY2d 113 [1958]; see also, Schmitt v Schmitt, 123 AD2d 617 [2d Dept 1986], lv dismissed 69 NY2d 1038 [1987].) Whether plaintiff’s causes of action under counts 1 and 5 are viewed as alleging a breach of that contract in general, or a breach of the warranty provision in particular, CPLR 213 (2) requires that this action have been commenced within six years after the cause of action accrued. As to these claims, the cause of action accrued on March 25, 1982, when the parties executed the separation agreement. Since plaintiff did not institute this action until June 1993, counts 1 and 5 are time barred. (See, Schmitt v Schmitt, supra.)
Resolution of the viability of the three causes of action sounding in fraud turns on different considerations. Under CPLR 213 (8), which must be read in conjunction with CPLR 203 (g) (Garguilio v Garguilio, 201 AD2d 617, 618 [2d Dept 1994]), the period of limitations is the longer of six years from the accrual of the cause of action, or two years from the date when plaintiff discovered the fraud, or, with reasonable diligence, could have discovered it. As to these limitations, plaintiff contends that her causes of action for fraud are timely because she commenced this suit within two years of the time when she first "actually discovered” that she was entitled to a portion of defendant’s pension. Plaintiff’s reliance on the standard of "actual discovery” is, of course, erroneous, given the plain language of CPLR 203 (g) ("or from the time when facts could with reasonable diligence have been discovered”). Indeed, it is based upon the "reasonable diligence” alternative that defendant, rather than plaintiff, is entitled to summary judgment (see, CPLR 3212 [b]).
Although plaintiff initially alleged that she did not even have knowledge of the existence of defendant’s pension rights when she signed the separation agreement (plaintiff’s com *139 plaint, para 8), on this motion she takes the position that she did not know of her entitlement to a share of defendant’s pension. That she has altered her position in this regard is not surprising, since she admitted at her EBT that she was aware at the time she executed the separation agreement that defendant was entitled to a pension. In fact, such knowledge was in her possession not just in 1982, when the separation agreement was executed, but considerably prior thereto. At her EBT she also admitted knowing in 1973 that police officers were entitled to pension benefits, not just through defendant’s employment experience, but through her own employment with the NYPD. Based upon these admissions, it is beyond dispute that plaintiff was fully aware, when she executed the separation agreement, that defendant possessed pension rights at that time.
Notwithstanding that knowledge, plaintiff executed the separation agreement in full, and raised no questions concerning defendant’s pension rights, despite the obvious conflict between her knowledge and defendant’s failure to list his pension rights as marital property pursuant to the warranty provision. Nor for that matter did she raise this issue either in February 1984, when the amendment was signed, or in October 1984, when the divorce proceedings were finalized. Instead, 13 years after the execution of the separation agreement, she seeks to assert an interest in defendant’s pension.
On a summary judgment motion, where the issue turns on the time plaintiff had knowledge of a fraud, the court should not dismiss a complaint unless it conclusively appears that such knowledge was possessed at a point sufficiently earlier so as to invoke the bar of the Statute of Limitations. (See, Erbe v Lincoln Rochester Trust Co., 3 NY2d 321 [1957].) In this case, applying the "reasonable diligence” standard of CPLR 203 (g), it is clear that dismissal of the complaint is required.
As discussed above, plaintiff had actual knowledge of the existence of defendant’s pension rights when the separation agreement was executed. What she is in fact claiming is not that defendant concealed the existence of such benefits, but that he concealed from her the legal status of such benefits as marital property.
An action sounding in fraud can be based on concealment of material facts which are relied upon by another party to her detriment. (Emord v Emord, 193 AD2d 775, 776 [2d Dept 1993] ["(c)oncealment, with intent to defraud, of facts which one is *140 duty-bound to disclose is of the same legal effect and significance as affirmative misrepresentations of fact”]; County of Westchester v Becket Assocs., 102 AD2d 34 [2d Dept 1984], affd 66 NY2d 642 [1985].) The marital and contractual relationship between the parties at the time of execution of the separation agreement placed a duty upon defendant to disclose to plaintiff all material facts known to him concerning his assets. (See, Abbate v Abbate, 82 AD2d 368 [2d Dept 1981]; Simms v Simms, 31 Misc 2d 882 [Sup Ct, Kings County 1961].) If defendant had concealed the existence of his pension benefits with the intent to defraud plaintiff, certainly she would have been entitled to relief as sought in this action. (See, Emord v Emord, supra.)
However, what defendant failed to disclose was not the existence of the benefits, but rather their legal status as marital property. In this regard, what plaintiff is actually asserting is that defendant did not express to her his legal opinion, assuming he had such, that she was entitled to an interest in his pension benefits. Given that Majauskas (supra) was not decided until April 1984, it is not likely that defendant was even aware of the fact that his pension was marital property at the time the separation agreement was signed.
Nevertheless, even if defendant had a legal opinion as to the status of the pension benefits, his failure to disclose that opinion does not constitute fraud. Generally, a false statement concerning the law is not considered a factual misrepresentation which will support an action based upon fraud. (Levin v Levin, 253 App Div 758 [2d Dept 1937]; Lefferts v Lefferts, 243 App Div 278 [1st Dept 1935].) However, such a cause of action can be asserted by one who has reasonably relied upon "a false opinion of law [which is] misrepresented as a sincere opinion”. (National Conversion Corp. v Cedar Bldg. Corp., 23 NY2d 621, 628 [1969].) So too may a fraud action be based upon a false "mixed statement of fact as to what the law is or whether it is applicable”. (Supra, at 627 [false statement by landlord to lessee that premises were in unrestricted zoning area was actionable].)
However, "[o]ne who neither withholds nor misstates the facts cannot be adjudged guilty of fraud simply because the courts finally decide the law to be other than he claimed it to be”. (Amherst Coll, v Ritch, 151 NY 282, 322 [1897]; Levin v Sweet, 147 App Div 894 [2d Dept 1911].) If liability cannot be founded upon an erroneous opinion of the status of the law, this court cannot conclude that it may be found where, as *141 here, a layperson did not provide any opinion as to the legal status of pension benefits, at a time when the courts had not fully determined that issue.
Thus, while a misstatement of law conveyed with intent to defraud a party may support a fraud claim (see, Allen v Westpoint-Pepperell Inc., 945 F2d 40 [2d Cir 1991]; Hutchins v Utica Mut. Ins. Co., 107 AD2d 871 [3d Dept 1985]), in this case plaintiff admitted that defendant never made any false or misleading statement to her concerning the status of his pension benefit as a nonmarital asset. While defendant was undoubtedly under an obligation to fully inform plaintiff as to the existence of his pension benefits (see, Abbate v Abbate, supra), which he did, this court cannot read into that requirement an additional obligation that defendant proffer his opinion as to whether those benefits are marital property under Domestic Relations Law § 236 (B). This conclusion is buttressed by the fact that the information, i.e., the legal opinion, allegedly withheld by defendant, was available to plaintiff from either of her former attorneys. (See, K.M.L. Labs, v Hopper, 830 F Supp 159 [ED NY 1993].)
It is this court’s conclusion that fair dealing between the parties required asset identification, and not asset characterization, by defendant. Where, as here, defendant’s pension asset was identified, either directly by defendant’s statements, or indirectly through knowledge gained and possessed by plaintiff, as she admits, defendant’s failure to offer his characterization of that asset as marital property does not constitute fraud. (Cf., Chalos v Chalos, 128 AD2d 498, 499 [2d Dept 1987], lv denied 70 NY2d 609, rearg denied 70 NY2d 927 [1987] ["plaintiff knew about the defendant’s holdings in certain property and the mere fact that the defendant did not apprise the plaintiff of their worth is not sufficient to indicate that a fraud was perpetrated upon her”, so as to warrant rescinding a separation agreement].)
However, even if defendant’s concealment of the legal status of his benefits is actionable, plaintiff’s fraud claims are still untimely. By her own admission, plaintiff knew of the existence of the pension benefits long before the separation agreement was executed. Under these circumstances, she should have made inquiry as to why these benefits were not listed as marital property in the separation agreement. (See, County of Westchester v Becket Assocs., supra, 102 AD2d, at 51). Had she done so at time of the execution of the separation *142 agreement or its amendment,[2] her respective attorneys could have reviewed the issue and appropriately advised her. Moreover, had she even waited until the divorce proceeding to raise the issue, her attorney in that matter may have had the benefit of the Majauskas decision (supra) to guide him and to preserve her rights. Instead, it appears that plaintiff did not discuss this with either of her attorneys.[3] Her failure in this regard cannot be held against defendant, as it constitutes a lack of reasonable diligence to discover the fraud, despite having sufficient facts to do so. (Cf., Scally v Simcoma Elec. Corp., 135 AD2d 1086 [4th Dept 1987].)
To the contrary, this is a situation where plaintiff was aware of all of the facts necessary for her to obtain a determination of her rights to defendant’s pension. (Cf, Paul v Paul, 177 AD2d 901 [3d Dept 1991], lv denied 79 NY2d 756 [1992].) For reasons not disclosed on this motion, she elected not to take such action. However, for the purposes of defendant’s claim that her action is time barred, it is clear that plaintiff could have, through due diligence, discovered the legal status of defendant’s pension benefits several years prior to the date she filed this action, and still within the period of limitations. Having commenced this proceeding in June 1993, her causes of action under counts 3, 4 and 5 are untimely. (See, Matter of Devens v Gokey, 12 AD2d 135 [4th Dept 1961], affd 10 NY2d 898 [1961].)
To the extent that plaintiff seeks rescission of the separation agreement, that relief has also been untimely sought. Rescission is an equitable remedy subject to the equitable defense of loches, which defendant asserted in his answer to the complaint. Laches will bar equitable relief where a plaintiff unreasonably and inexcusably delays in asserting a claim, and by doing so injures or disadvantages the defendant. *143 (Groesbeck v Morgan, 206 NY 385 [1912]; Seligson v Weiss. 222 App Div 634 [1st Dept 1928].)
In the context of separation agreements, failure to timely raise a challenge to the validity of the agreement is more often viewed in terms of ratification, rather than loches. (See, Barry v Barry, 100 AD2d 920 [2d Dept 1984], affd 64 NY2d 627 [1984]; see also, Stoerchle v Stoerchle, 101 AD2d 831 [2d Dept 1984].) In the contractual context involved at bar, ratification is the affirmance of an avoidable agreement by silence or inaction with knowledge of one’s rights. (See, Strauss v Title Guar. & Trust Co., 284 NY 41 [1940].)
Plaintiff herein accepted the benefits of the separation agreement for 13 years before challenging its validity. Under the separation agreement defendant was obligated to pay plaintiff $200 monthly as maintenance, and child support of $200 monthly. The parties then renegotiated their agreement, and by the terms of the amendment, plaintiff waived any further maintenance, while defendant agreed to pay monthly child support of $266.66 per child, for their three children, equating to $800 per month in support. Notably, plaintiff has not asserted that defendant has failed to meet that obligation over the years since the amendment was executed.
Plaintiff’s acceptance of the benefits of the separation agreement and amendment, as further incorporated into the divorce judgment, over a period of 13 years, clearly constitutes a ratification of the separation agreement. (Beutel v Beutel, 55 NY2d 957 [1982] [ratification found upon acceptance of benefits for two years]; Melchiorre v Melchiorre, 142 AD2d 558 [2d Dept 1988] [ratification based on 2 years 9 months of accepting benefits].) This is especially true where, as here, plaintiff, "who was represented by counsel * * * sign[ed] an amendment to” the original separation agreement. (Franz v Franz, 107 AD2d 1060, 1061 [4th Dept 1985].)[4]
In sum, plaintiff, who was represented throughout each stage of the negotiation and execution of the separation agreement and its amendment, and in the divorce proceeding, and who knew of defendant’s pension rights for at least 10 years prior to the execution of the separation agreement, cannot be heard to complain at this late date that the agree *144 ment was fraudulently induced.[5] (See, Capone v Capone, 148 AD2d 565 [2d Dept 1989]; Surlak v Surlak, 95 AD2d 371 [2d Dept 1983].) Therefore, plaintiffs motion for summary judgment is denied, and summary judgment dismissing plaintiffs complaint is granted to defendant. (CPLR 3212 [b].)
Like plaintiff, defendant has also received the benefit of the parties’ agreement for these many years prior to asserting, in his first counterclaim, his claim to a share of plaintiff’s pension rights. Putting aside the fact that plaintiff denies having any such pension rights, since defendant was obviously aware of the existence of any such benefits, through his own employment with the NYPD, he too is foreclosed from asserting a challenge to the separation agreement at this time. (Schmitt v Schmitt, supra; Surlak v Surlak, supra.) Therefore, although not specifically requested by plaintiff in her motion, plaintiff is granted summary judgment dismissing defendant’s first counterclaim. (CPLR 3212 [b].)
Finally, both parties seek summary judgment in their favor as to defendant’s second counterclaim, which asserts that defendant is owed child support by plaintiff because the parties’ three children subsequently resided with him. Defendant litigated this very issue before Family Court Hearing Examiner Gladys E. Braxton in January 1993, a fact which he did not bring to this court’s attention on this motion. The Hearing Examiner determined that while the change of the children’s residence constituted changed circumstances, the parties had anticipated this change of residence in their separation agreement and the amendment, and had not provided for any child support to be paid by plaintiff. It is also clear that the Hearing Examiner also considered the respective financial positions of the parties, and concluded that defendant was not entitled to child support, in view of the fact that his income is double that of plaintiff. Since defendant’s counterclaim raises the same issues decided adversely to him *145 by the Hearing Examiner, his second counterclaim is barred by the doctrine of res judicata. (See, Kromberg v Kromberg, 56 AD2d 910 [2d Dept 1977], affd 44 NY2d 718 [1978].) Therefore, plaintiff is granted summary judgment dismissing defendant’s second counterclaim.

. Defendant argues that the motion should be denied on procedural grounds because only an affirmation of plaintiffs present attorney was submitted in support of the motion. It is clear, as defendant submits, that this affirmation by a person lacking personal knowledge of the facts is insufficient and, on its own, should be disregarded by the court as a nullity. (Zuckerman v City of New York, 49 NY2d 557 [1980].) However, inasmuch as plaintiff has submitted her own affidavit, albeit not until defendant had submitted opposing papers, the court has decided the motion on its merits. Considering the court’s ultimate determination on this motion, defendant cannot credibly complain that he has suffered any prejudice.

. As early as June 1983, there was an appellate court decision that pension benefits, whether vested or nonvested, constitute marital property subject to equitable distribution. (Damiano v Damiano, 94 AD2d 132 [2d Dept 1983].) Certainly, by the time the parties were amending the separation agreement, plaintiff’s counsel should have been aware of this development in the law, and could have discussed its significance with plaintiff as it related to defendant’s pension rights, had she only raised the issue with her attorney.

. When asked at the EBT if her attorney (presumably the one who represented her as to the separation agreement) was aware that defendant had a pension, plaintiff said she did not know. Certainly, had she informed him of this fact, her attorney would have been aware of the existence of that asset.

. In fact, as set forth above, the parties specifically acknowledged in the amendment that they confirmed the "division of property” section of the original separation agreement in all respects.

. Based upon this conclusion, the court need not, and does not, reach the issue of whether plaintiff is bound by the separation agreement provision in which she acknowledged, in effect, that there was full financial disclosure by both parties. (See, Grubman v Grubman, 191 AD2d 194, 195 [1st Dept 1993], lv denied 82 NY2d 651 [1993] ["plaintiffs express representations in the settlement agreement preclude her claims that defendant fraudulently misrepresented his finances to her”].)