OPINION OF THE COURT
Anthony L. Parga, J.
 Motion by the plaintiff husband for an order pursuant to CPLR 3211 (a) (5), dismissing defendant wife’s four counterclaims on the ground that they are barred by the six-year Statute of Limitations (CPLR 213), is granted as to the first three counterclaims which seek to set aside the parties’ antenuptial agreement based upon duress, fraud and mutual mistake, and is denied, as a matter of first impression, with respect to defendant’s fourth counterclaim based upon the unconscionability clause applicable to antenuptial agreements contained in Domestic Relations Law § 236 (B) (3). The court holds that in a prejudgment matrimonial action any claim that the parties’ antenuptial agreement is unconscionable is: (a) time barred as to any property distribution contained in the agreement by the six-year time limitation for equitable causes of action encompassed by CPLR 213 (1); and (b) not barred by any durational limitation of time with respect to the maintenance provisions contained in the agreement since these provisions are governed by the statutory mandate of Domestic Relations Law § 236 (B) (3) that “the amount and duration of *766 maintenance * * * not [be] unconscionable at the time of entry of final judgment”.
The parties were married on June 20, 1985, in Oceanside, New York. On the night before the wedding, the parties executed an antenuptial agreement which had been negotiated by their respective attorneys, both of whom are highly respected professionals who specialize in the practice of matrimonial law. The parties filed joint tax returns from 1987 through 1996; their gross income was approximately $2.2 million in 1987, and $1 million in 1995. This action for divorce was commenced by the plaintiff husband on July 16, 1996. One year later, on June 30, 1997, after the plaintiff served his complaint, the defendant served her amended verified answer and counterclaims seeking to set aside the parties’ antenuptial agreement.
It appears that under the terms of the agreement, the defendant could now receive maintenance for a 10-year period in the amount of $30,000 per year, plus a tax-free lump sum of $200,000. Such an agreement on its face does not appear to be unconscionable. However, the court was not requested to decide said issue in this motion (see, Christian v Christian, 42 NY2d 63, 71-72).
Defendant contends that she felt undue pressure to execute the agreement since the plaintiff insisted on its execution prior to the wedding. She further complains that the plaintiff never provided her with the necessary documents relating to his financial status, and contends that “[i]t was not until in or about October, 1995, when [she] became aware that plaintiff * * * possesses in excess of ten million [dollars] in assets and earns more than six hundred thousand dollars per year”. Defendant maintains that if she knew this prior to the execution of the antenuptial agreement, she “would never have agreed to accept the paltry sums afforded to [her]” under the agreement.
“Domestic Relations Law § 236 (B) was enacted in 1980 as part of the Equitable Distribution Law, which significantly reformed the New York statutory scheme governing division of property, economic life and familial rights and obligations upon dissolution of a marriage (see, L 1980, ch 281). In keeping with the strong public policy in favor of individuals resolving their own family disputes (see, Scheinkman, New York Law of Domestic Relations § 6.1, at 123), subdivision (3) authorizes spouses or prospective spouses to contract out of the elaborate statutory system and provide for matters such as inheritance, distribution or division of property, spousal support, and child custody and care in the event that the marriage ends.” *767 (Matisoff v Dobi, 90 NY2d 127, 132; see, Avitzur v Avitzur, 58 NY2d 108, cert denied 464 US 817.)
 The Appellate Division, Second Department, has held that actions which seek to rescind the provisions of a prenuptial agreement which allocate property must be commenced within six years of the execution of the agreement since that is when the cause of action accrues (Anonymous v Anonymous, 233 AD2d 350, 351; Pacchiana v Pacchiana, 94 AD2d 721; CPLR 213). Thus, defendant’s 1997 claim of mutual mistake in the execution of the 1985 contract is time barred (CPLR 213 [1], [2]). Similarly, defendant’s claim of coercion and duress is also time barred since the right to rescind the agreement on either ground accrues upon the execution of the contract (Pacchiana v Pacchiana, supra). Defendant’s fraud claim is also untimely since (a) it was not commenced within six years after the commission of the fraud, (b) defendant could have discovered the purported fraud within a reasonable time after the marriage (Pacchiana v Pacchiana, supra; CPLR 213 [8]), and (c) defendant’s conclusory, unsubstantiated statement that she discovered the fraud in October 1995, 21 months prior to her assertion of fraud, is an insufficient basis to establish actual, timely discovery of the fraud (see, CPLR 203 [g]; Garguilio v Garguilio, 201 AD2d 617, 618; Cucchiaro v Cucchiaro, 165 Misc 2d 134, 138-139; see also, Kronos, Inc. v AVX Corp., 81 NY2d 90, 94). The court notes that defendant did not allege sufficient facts which state a cause of action in fraud (CPLR 3016 [b]). The mere contention that the plaintiff failed to disclose the value of his assets “does not, standing alone, constitute fraud or overreaching sufficient to vitiate an antenuptial agreement” (Panossian v Panossian, 172 AD2d 811, 813; Eckstein v Eckstein, 129 AD2d 552, 553).
However, defendant’s invocation and reliance upon Domestic Relations Law § 236 (B) (3), in support of her fourth counterclaim that the subject agreement is unconscionable, is not barred by any time restriction as to the maintenance provisions in the agreement. The statute specifically preserves that kind of a claim and provides that in order for an antenuptial maintenance agreement to be enforceable it must “not [be] unconscionable at the time of entry of final judgment” (Domestic Relations Law § 236 [B] [3]). A judgment of divorce has yet to be entered in this action, nor are the parties scheduled for trial. Consequently, the maintenance provisions in the parties’ antenuptial agreement may be reviewed for its conscionability at any time prior to the entry of final judgment, even if that *768 date is well beyond six years after the execution of agreement (Scheinkman, New York Law of Domestic Relations, 1997 Pocket Part, § 6.8, at 14).
The court notes that the modern trend, which has been expressed in section 8 of the Uniform Premarital Agreement Act (9B ULA 379), and adopted by at least 18 States other than New York, is that the Statute of Limitations on a spouse’s cause of action challenging the validity of any aspect of the antenuptial agreement is tolled during the marriage and does not begin to run until one party physically separates from the other, or commences an action for divorce or separation, or dies (Lieberman v Lieberman, 154 Misc 2d 749, 753-754). According to this reasoning, any judicial holding which “would require a spouse to take affirmative action to preserve claims to potential marital assets even before there had been any hint of marital discord * * * flies in the face of logic and would be against public policy” since it “would critically undermine * * * the vitality of marriages generally” (Zuch v Zuch, 117 AD2d 397, 404-405). The Court of Appeals cases relied upon by the plaintiff, Scheuer v Scheuer (308 NY 447, 452) and Dunning v Dunning (300 NY 341), for the broad proposition that marriage does not toll any Statute of Limitations pertaining to a cause of action one spouse may have against the other, do not compel a different result here since those cases were decided 25 to 30 years prior to the enactment of Domestic Relations Law § 236 (B) (3) (cf., Anonymous v Anonymous, supra).